UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
PADUCAH DIVISION
5:02-CV-173-R

Dennis G. GULASKY, Sr.,                                                                                    PLAINTIFF

vs.

INGRAM BARGE COMPANY,                                                                            DEFENDANT

## MEMORANDUM OPINION

This matter comes before the Court on Defendant Ingram Barge Company's ("Ingram") Motion for Summary Judgment (Docket #28). The Plaintiff, Dennis G. Gulasky, Sr. ("Gulasky") has responded (Docket #35), and Ingram has replied to that response (Docket #48). This matter is now ripe for adjudication. For the following reasons, Ingram's Motion for Summary Judgment is **DENIED**.

## BACKGROUND

The case arises out of an accident that occurred on or about November 18, 2000, when the Plaintiff fell from a ladder while climbing out of a barge floating on the Monongahela River. The accident took place at a facility owned by the Defendant, a Tennessee corporation, in Dravosburg, Pennsylvania. At the time Gulasky was employed by Ingram. Gulasky received several injuries, including injuries to his right leg that resulted in a below the knee amputation.

Gulasky was hired as a laborer by Ingram in 1994, and about one year later he was promoted to a welder. Though he continued to perform some laborer duties after his promotion, his general duties as a welder involved patching and repairing river barges using welding equipment. Gulasky performed his welding duties for Ingram while the barges were moored somewhere on the river at the Dravosburg facility, but did not ride any line boats nor serve as

deckhand on any line boats.  Part of being a welder involved fleet work, which required Gulasky to use a small tug to turn barges around to be able to access their sides for repairs.  Gulasky also had to board fleeted barges to check for leaks.  Gulasky maintained working hours from 7am until 3pm.

At the Dravosburg Plant, Ingram operated several vessels that were used in cleaning, repair and fleeting work.  This included both harbor tugs and several small work flats.  During his five years as a welder Gulasky worked on at least twenty-one (21) barges, with Ingram either owning or operating eight (8) of these vessels.  According to the time records kept by both Gulasky and Ingram, Gulasky spent 87.19% of his time working on Ingram vessels.  These barges were often tied together with rope lines while Gulasky worked on them, and the barges potentially exposed Gulasky to tripping hazards and falling overboard.

Following his injury Gulasky filed suit against Ingram for negligence under the Jones Act, for unseaworthiness under general maritime law, and a claim under the Longshore and Harbor Worker's Compensation Act ("LHWCA"), with the parties agreeing to dismiss the claim under the LHWCA.  In order for Gulasky to recover under the Jones Act and unseaworthiness under general maritime law, he must show that while working for Ingram he qualified as a "seaman" for purposes of the statute.  In its Motion Summary Judgment, Ingram argues that Gulasky was not a "seaman" at the time of the accident because he lacked a connection to a vessel or identifiable fleet and his duties did not expose him to the perils of sea.  The Plaintiff counters in his response that enough disputed facts exist for the jury to determine whether or not Gulasky qualified as a seaman as a matter of law.  In its reply Ingram reemphasizes its point that Gulasky does not have a connection to an identifiable fleet of vessels, and that the nature of his

connection to any vessels related to this matter is not substantial enough to fulfill the seaman requirement.

## STANDARD

Summary judgment is available under Fed. R. Civ. P. 56(c) if the moving party can establish that the "pleadings, depositions, answer to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law."  In determining whether summary judgment is appropriate, a court must resolve all ambiguities and draw all reasonable inferences against the moving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp*., 475 U.S. 574, 587 (1986).

"[N]ot every issue of fact or conflicting inference presents a genuine issue of material fact." *Street v. Bradford & Co*., 886 F.2d 1472, 1477 (6th Cir. 1989).  The test is "whether the party bearing the burden of proof has presented a jury question as to each element in the case." *Hartsel v. Keys*, 87 F.3d 795, 799 (6th Cir. 1996).  The plaintiff must present more than a mere scintilla of evidence.  To support this position, he must present evidence on which the trier of fact could find for the plaintiff. *See id.* (citing *Anderson v. Liberty Lobby*, 477 U.S. 242, 251-52 (1986)).  Mere speculation will not suffice to defeat a motion for summary judgment: "[t]he mere existence of a colorable factual dispute will not defeat a properly supported motion for summary judgment.  A genuine dispute between the parties on an issue of material fact must exist to render summary judgment inappropriate." *Monette v. Electronic Data Systems Corp*., 90 F.3d 1173, 1177 (6th Cir. 1996).  Finally, while Kentucky state law is applicable to this case pursuant to *Erie Railroad v. Tomkins*, 304 U.S. 64 (1938), a federal court in a diversity action applies the

standards of Fed. R. Civ. P. 56, not "Kentucky's summary judgment standard as expressed in *Steelvest, Inc. v. Scansteel Serv. Ctr., Inc.*, 807 S.W.2d 476 (1991)." *Gafford v. General Electric Co.*, 997 F.2d 150, 165 (6th Cir. 1993).

## DISCUSSION

The Jones Act, 46 U.S.C. App. §688(a), states in pertinent part:

> Any seaman who shall suffer personal injury in the course of his employment may, at his election, maintain an action for damages at law, with the right of trial by jury, and in such action all statutes of the United States modifying or extending the common-law right or remedy in cases of personal injury to railway employees shall apply.

At this juncture the Court must determine based on the facts and evidence presented whether or not the trier of fact could find that Gulasky qualified as a seaman under the Jones Act. Though the parties disagree as to the application of the case law in deciding who constitutes a seaman under the Jones Act, the parties do agree that the 1995 United States Supreme Court case of *Chandris, Inc. v. Latsis* established the test in determining seaman status. *Chandris, Inc. v. Latsis*, 515 U.S. 347, 368 (1995). The two-part test looks to see if: 1) the employee's duties contribute to the function of the vessel and 2) whether the employee has a substantial connection in both time and nature to a vessel or identifiable group of vessels in navigation that would expose the employee to the perils of the sea. *Chandris, Inc.*, 515 U.S. at 368. In its Motion for Summary Judgment Ingram does not contest the first part of the test, but insists that Gulasky is not a seaman because he lacks a connection to a vessel or an identifiable group of vessels, and that his duties do not expose him to the perils of the seas. The Court will analyze each of these assertions separately.

### *Whether Gulasky may have a connection to a vessel...*

Both parties reference the United States Supreme Court case of *Harbor Tug & Barge Co. v. Papai* as the controlling judicial authority on defining a fleet for purposes of the Jones Act. The Supreme Court held that whether the vessels were under common ownership and/or control determined what constituted an identifiable group of vessels in order for the "fleet doctrine" of the Jones Act to apply. *Harbor Tug & Barge Co. v. Papai*, 520 U.S. 548, 557 (1997). In the Fifth Circuit Court of Appeals case of *Roberts v. Cardinal Services, Inc.*, cited by both parties, the Court stated:

> when a group of vessels is at issue, a worker who aspires to seaman status must show that at least 30 percent of his time was spent on vessels, every one of which was under defendant-employer's common ownership or control.

In looking at the plain meaning of this statement, an employee must work at least 30 percent of his time on vessels owned by the same employer in order for a worker to have a connection to the vessel. In the instant matter, the facts indicate that Ingram owned approximately 70% of the vessels on which Gulasky worked. Further, Gulasky spent approximately 80% of his time working on vessels owned by Ingram. These facts, taken with the plain meaning of the fleet doctrine, could lead the finder of fact to hold that Gulasky had a connection to the Ingram vessels.

### *Did Gulasky's duties expose him to the perils of sea?*

Ingram asserts that even if Gulasky has a connection to the vessels, his duties did not expose him to the perils of sea. In *Chandris Inc.*, the Supreme Court noted that the purpose of the perils of sea requirement was to "separate sea-based maritime employees who are entitled to Jones Act protection from those land-based workers who have only a transitory or sporadic

connection to a vessel in navigation." *Chandris Inc.* at 368. Ingram argues that the United Supreme Court in *Harbor Tug & Barge Co.* held that a worker must go out to sea in order to be exposed to the perils of sea. The language of the Court in that opinion relied upon by Ingram reads:

> For the substantial connection requirement to serve its purpose, the *inquiry* into the nature of the employee's connection to the vessel must concentrate on whether the employee's duties take him to sea. This will give substance to the inquiry both as to the duration and the nature of the employee's connection to the vessel and be helpful in distinguishing land-based from sea-based employees.

*Harbor Tug & Barge Co.*, 520 U.S. at 555 (emphasis added). Although Ingram would interpret the language of the Court to require an employee to go out to sea in order to be exposed to the perils of sea, the statement taken in its entirety does not put forth that requirement for an employee under the Jones Act. Rather, the Court agrees with Gulasky, in that the language reads that one of the factors that a Court should take into consideration when determining whether or not an employee is exposed to the perils of sea should include the seagoing nature of his/her duties.

In support of the argument that an employee need not go out to sea in order to be exposed to the perils of sea, Gulasky cites *Southwest Marine, Inc. v. Gizoni*, where the United States Supreme Court held that "[t]here is no indication in the Jones Act, the LHWCA or elsewhere, that Congress has excluded from Jones Act remedies those traditional seaman who owe allegiance to a vessel at sea, but who do not aid in navigation." *Southwest Marine, Inc. v. Gizoni*, 502 U.S. 81, 89 (1991). The Court went on to determine that:

> [b]ecause a ship repairman may spend all of his working hours aboard a vessel in furtherance of its mission- even one used exclusively in ship repair work- that may qualify as a Jones Act seaman...[i]f reasonable persons, applying the proper legal standard, could differ as to whether the employee was a member of a crew, it is a

6

question for the jury.

*Southwest Marine, Inc.*, 502 U.S. at 92. The Court held that the granting of summary judgment in the matter was inappropriate because based upon the facts the decision as to whether or not the employee qualified as a seaman under the Jones Act was a question for the finder of fact.

In the instant matter, similar to *Southwest Marine Inc.*, enough facts exist for the finder of fact to determine whether or not Gulasky was exposed to the perils of sea through his duties working on Ingram barges. Though the finder of fact should consider whether or not Gulasky's duties took him out to sea, Gulasky need not have gone to sea in order to be exposed to its perils.

Therefore, this Court finds that the question as to whether or not Gulasky qualifies as a seaman under the Jones Act is a jury issue that should go before the finder of fact.

## CONCLUSION

For the foregoing reasons, the Defendant's Motion for Summary Judgment is **DENIED.**

An appropriate order shall issue.